## John Wittbold and Company, Appellee, v. City of Chicago Heights, Appellant.

### Gen. No. 39,603.

Opinion filed March 16, 1938. Rehearing denied April 1, 1938.

EDWIN B. POORMAN, of Chicago, for appellant.

ROBERT D. MELICK, of Chicago, for appellee.

MR. JUSTICE HALL delivered the opinion of the court.

Plaintiff brought suit against the City of Chicago Heights on a series of warrants issued against various municipal funds of that city. Each of the warrants is in the following form:

"Chicago Heights, Ill. ..........19..
"The Treasurer:

of the City of Chicago Heights No. ...... Will pay to the order of .......... $..... Dollars for .......... out of money in the treasury not otherwise appropriated from ......... Fund.

...................... ......................
    City Clerk            Mayor"

Each warrant was issued in payment for supplies of various kinds furnished to the City of Chicago Heights, and in each case, the blank warrant as shown herein, was filled in to indicate the particular fund against which it was drawn. The complaint filed in the cause contains the following allegation: "That the said defendant, Municipal Corporation, being so possessed of the said appropriated funds for Street and Alleys Fund, Firemen Funds and Property Funds; for the corporate purposes as indicated in its several yearly appropriation bill, did issue on said form of Warrant, by inserting therein the date, Number of Warrant, the name of the payee, the amount due for service or material and the name of the fund as indicated in the appropriation ordinance," which is followed by a statement in the complaint of the purpose for which the warrant was given, together with a statement to the effect that in each case the warrant was cashed and indorsed, and that the title to the same is now in the plaintiff. The defendant filed an answer to the complaint filed in the cause in which it tacitly admits that the warrants were issued and cashed, as alleged, and that a tax had previously been levied to supply funds for the various purposes appropriated for the maintenance of the village, but "denies that there was any money in the appropriated funds in the City Treasury, at the respective dates of issuance of each and every of the city warrants described in said amended complaint, to pay each and every of said city warrants respectively; and denies that it, by its treasurer, was in possession of any appropriated funds and moneys, against which said city warrants were drawn and from which said city warrants were payable, at the respective dates of issuance of said city warrants."

As we understand the answer of the defendant, the position taken by it is that the issuing of these war-

rants against designated funds for which a tax had been levied, created a debt beyond the constitutional and statutory limit which had already been reached when the warrants were issued. It is to be noted that the defendant does not deny that the taxes had been collected by it for the purpose for which they were originally appropriated and levied. Its position seems to be that even though the taxes had been levied, collected and allocated to the funds for which they were originally appropriated, that they have been diverted to other uses than those for which they were originally appropriated, and that therefore plaintiff cannot recover.

A motion was made by plaintiff to strike defendant's answer and for judgment. After a hearing, the court granted the motion and entered judgment for plaintiff. This is an appeal from that judgment.

From the pleadings here, we conclude that the defendant had levied and collected the taxes for the purposes for which they were appropriated, and that these warrants were issued against the various funds for which the tax was collected and appropriated.

In *People v. Chicago & N. W. Ry. Co.*, 308 Ill. 54, a similar situation arose. In making a statement of the issues involved, the Supreme Court said:

"It appears from the record that after the taxes for the city of Chicago were levied and collected for the year 1920, as provided by the appropriation ordinance of the city, there was found to be a deficiency amounting to $8,000,000. In the year 1921 this deficiency was shown to be partly in the form of open indebtedness on vouchers and pay-rolls of the city and partly in the form of judgments against the city. Thereafter the city council passed an ordinance authorizing bonds to the extent of $8,000,000, and this ordinance was submitted to a referendum vote, as required by law, and approved by the voters of the city. Bonds were

thereafter issued and sold and all or a part of the proceeds used to pay indebtedness theretofore incurred by the city. In the year 1921 the city levied $600,000 for principal, and $350,000 for interest, to pay the interest on all of these bonds and to take up and retire some of them, and it is insisted that the levy so made is illegal and unconstitutional.'' In this case, in holding that the bond issue was legal and valid, the court said:

''It would seem to be argued by appellant that because the statute expressly provides for an annual tax levy for current expenses of the corporation, such provision of the statute must be construed so as to preclude the city from the right to raise funds for the current expenses through the medium of bonds. This argument of counsel would seem to be, indirectly at least, answered by the reasoning of this court in *People v. Village of Hyde Park,* 117 Ill. 462, and *People v. Bowman,* 253 Ill. 234, and more directly by the holding in *Stone v. City of Chicago,* 207 Ill. 492. . . . The opinion in that case, [*Stone v. City of Chicago, supra,*] comments favorably on *City of Huron v. Second Ward Savings Bank,* 30 C. C. A. 38, saying on page 503, that the objection made to a recovery upon the bonds sued upon was that 'the power granted by the charter to the city council to pay current expense warrants of the city by a tax levy implies the exclusion of the power to refund such warrants by the issue of negotiable bonds. The court said: ''The contention would be worthy of serious consideration if the express power to issue negotiable bonds was not also granted to the city council by this charter, but the charter grants to the council authority 'to appropriate money and provide for the payment of the expenses and indebtedness of the corporation,' and gives it both the power to levy taxes and the power to borrow money and issue bonds for this purpose. It cannot

be that the grant of either of these powers excludes either, and the choice of the method by which the indebtedness of the city should be paid is left to the discretion of the council.'' ''This court also in *Stone v. City of Chicago, supra,* quotes approvingly from *Taylor v. Thompson,* 42 Ill. 9, where it was held that a tax for a corporate purpose was 'one to be expended in a manner which shall promote the general prosperity and welfare of the municipality which levies it'; and also quotes with approval from *National Life Ins. Co. v. Mead,* 13 S. D. 37, where it was held that the power to issue bonds is co-extensive with the power to borrow money, *and that either power might be exercised for any corporate purpose . . . .''* (Italics ours.)

We are of the opinion that the circuit court was correct in sustaining the motion to strike, and the judgment is, therefore, affirmed.

*Judgment affirmed.*

HEBEL, P. J., and DENIS E. SULLIVAN, J., concur.